WILLIAMS, J.
|,In this community property partition litigation, Alice Catherine Bordelon Politz appeals a trial court judgment in favor of her former husband, Nyle Anthony Politz. For the following reasons, we affirm the trial court’s judgment and remand this matter to the trial court with instructions to schedule a hearing to determine whether Ms. Politz is entitled to permanent spousal support and the amount to which she is entitled.
FACTS
Nyle Anthony Politz and Alice Catherine Bordelon Politz were married on May 28, 1977. Mr. Politz left the matrimonial domicile on September 18, 2002, and filed a petition for divorce on October 18, 2002.[1] A judgment of divorce was rendered on May 21, 2003. However, the parties have been embroiled in litigation with regard to various ancillary issues for more than 10 years.[2]
On March 16, 2004, Mr. Politz filed a petition of rule nisi, seeking partition of the parties’ community property. He also filed a sworn detailed descriptive list of the assets and debts of the community and made numerous claims for reimbursement. On July 19, 2004, Ms. Politz filed a detailed descriptive list; she also made claims for reimbursement and for “mismanagement” and “unauthorized alienation” of community property. 1 ¿Thereafter, Mr. Politz filed two amended detailed descriptive lists.[3]
Subsequently, Ms. Politz filed a rule for contempt, alleging that Mr. Politz had violated an injunction which barred both parties from alienating community property. More specifically, she alleged that he had liquidated certain retirement accounts which belonged to the community. On February 28, 2005, the trial court entered a judgment awarding to Ms. Politz “the balance in the Vanguard accounts in the names of either or both of the parties herein as an allocation of an asset of the community[.]”[4]
*810 The partition trial finally commenced in 2010.[5] After hearing the testimony and reviewing the evidence presented at trial, the trial court determined that the total assets of the community were $128,132.35. The court allocated one-half interest in the property to each party ($64,066.17 each). Further, the court made the following findings:
[[Image here]]
3. Mrs. Politz has assets in her possession in the amount of $22,000.00.
[¾4. Mr. Politz has assets in his possession in the amount of $55.54.
5. Mr. Politz’s reimbursement claims total $171,692.75, which divided by [two] entitle[s] him to $85,846.37 from Mrs. Politz’s side. To this figure is added the separate property claim of $1,197.00 plus the rental claim of $6,294.50, for a total reimbursement/rental total of $93,337.87.
6. Mr. Politz’s reimbursement/rental claim of $93,337.87 is well over Mrs. Politz’s fifty (50%) percent interest in the remaining assets ($64,066.17).
7. Mr. Politz would be entitled to receive his fifty (50%) percent of the net community in addition to Mrs. Politz’s fifty (50%) percent of the net community against his reimbursement claims to the extent of the measure of the community property.
8. There are insufficient community assets to resolve the measure of the reimbursement claims.
Because the amount allocated to Ms. Politz was insufficient to resolve the reimbursement claims asserted by Mr. Politz, the court allocated all remaining community assets to Mr. Politz, including an undivided interest in 2124 Fairfield Avenue, LLC; an undivided interest in Jones, Odom, Davis & Politz, LLP; an undivided interest in Nyle A. Politz, LLC; the sum of $81,176.81 in the client trust account of Gary A. Bowers (held in escrow from the sale of the matrimonial domicile); and the ownership of two retirement accounts and two life insurance policies. To further offset Mr. Politz’s reimbursement claims, the court also allocated to Mr. Politz royalties due to Ms. Politz from mineral leases for the years 2003-2012.[6]
|4Ms. Politz appeals.[7]
*811 DISCUSSION
Ms. Politz contends the court erred in allocating the following community assets to Mr. Politz: (1) two Vanguard retirement accounts which had been allocated to her in a previous judgment; (2) two Trans-America life insurance policies; (3) reimbursement for cash advances Mr. Politz made on credit cards he obtained after the termination of the community; and (4) a reimbursement claim in the amount of $2,500.
LSA-R.S. 9:2801 provides, in pertinent part:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime |5or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
* * *
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so .that each spouse receives property of an equal net value.
(e) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or *812 separate property, movable or immovable, as security.
⅜ * *
Generally, the property of married persons domiciled in Louisiana is either community or separate. LSA-C.C. art. 2335. The community property comprisés: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, |fiunless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property. LSA-C.C. art. 2338. Wages are the premier community asset acquired through the effort, skill or industry of either spouse. Ross v. Ross, 2002-2984 (La.10/21/03), 857 So.2d 384; Gill v. Gill, 39,406 (La.App.2d Cir.3/9/05), 895 So.2d 807.
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community. Clemons v. Clemons, 42,129 (La.App.2d Cir.5/9/07), 960 So.2d 1068, writ denied, 2007-1652 (La.10/26/07), 966 So,2d 583; Mason v. Mason, 40,804 (La.App.2d Cir.4/19/06), 927 So.2d 1235, writ denied, 2006-1524 (La.10/13/06), 939 So.2d 366. A trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Id. Factual findings and credibility determinations made by the trial court in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. Clemons, supra. However, the trial court’s allocation or assigning of assets and liabilities in the partition of community property is reviewed by this Court under the abuse of discretion standard. Benoit v. Benoit, 2011-0376 (La.App. 1st Cir.3/8/12), 91 So.3d 1015; Legaux-Barrow v. Barrow, 2008-530 (La.App.5th Cir.1/27/09), 8 So.3d 87, writ not cons., 2009-0447 (La.4/13/09), 5 So.3d 152.
| ^Retirement Accounts
Ms. Politz contends the trial court erred in allocating to Mr. Politz two Vanguard retirement accounts. She argues that the same retirement accounts were awarded to her in a judgment dated February 28, 2005.
As stated above, Ms. Politz filed a rule for contempt against Mr. Politz in a prior proceeding. She alleged that he had violated an injunction by removing funds from a Vanguard account ending in 4945. She sought a judgment compelling Mr. Politz “to provide a full accounting for all monies withdrawn from the community account[.]” Following a hearing, the trial court rendered a judgment, signed April 26, 2005, awarding to Ms. Politz “the balance in the Vanguard accounts in the names of either or both of the parties herein as an allocation of an asset of the community[.]”
We have reviewed the detailed descriptive lists introduced by both parties. The Vanguard account, ending in 4945, which was addressed by the court in the prior proceedings, was not listed on either party’s detailed descriptive ¡list in this partition proceeding. By the time of the trial herein, the accounts previously awarded to Ms. Politz were her separate property. During the trial, Mr. Politz testified with regard to the Vanguard accounts at issue and was cross-examined repeatedly by Ms. Politz regarding those accounts. Mr. Politz unequivocally testified that he had turned over to Ms. Politz the Vanguard accounts that were at issue in the 2005 *813 judgment. Ms. Politz did not refute his testimony. Thus, the testimony, and the varying account numbers of the retirement accounts introduced into the record, indicate that the accounts awarded to Ms. Politz in the prior judgment were 18not the same accounts as those listed on the parties’ detailed descriptive lists. Consequently, we find that the trial court did not abuse its discretion in allocating the two Vanguard retirement accounts to Mr. Politz.

TransAmerica Life Insurance Policies

Ms. Politz contends the trial court erred in allocating both life insurance polices to Mr. Politz. She argues at least one of the polices should have been awarded to her because Mr. Politz “kept sole control and possession of both ... policies, never affording [her] the opportunity to control and possess the one listing [her] as beneficiary.”
Under Louisiana law, life insurance policies are treated as unique contracts governed by their own rules rather than by the Civil Code. Talbot v. Talbot, 2003-0814 (La.12/12/03), 864 So.2d 590, citing Katherine S. Spaht & W. Lee Hargrave, 16 Louisiana Civil Law Treatise, Matrimonial Regimes § 3.32, at 122 (2nd ed.1997). According to the rules of privity of contract, the contracting spouse is the sole manager of the contractual rights that are provided under the policy. Id. In principle, contracts produce effects as between the contracting parties only. Talbot, supra, citing LSA-C.C. art. 2346, cmt. (B) (2003).
Upon termination of the community, a life insurance policy purchased with community funds during the community is “a co-owned asset subject to partition ' by the co-owners.” Talbot, supra, citing Spaht & Hargrave, supra, § 3.32, at 125; LSA-C.C. art. 2336. Under the privity principle, the policy should be awarded to the owner of the policy, with the other spouse receiving property of an equal value. Id.
|9In the instant case, it is undisputed that Mr. Politz is the owner of the policies and that the life insurance polices are community property. However, contrary to Ms. Politz’s assertion, the law does not mandate that she be awarded the policy on Mr. Politz’s life merely because she was listed as the beneficiary. Thus, in accordance with the privity principle, we find no error in the trial court’s judgment allowing Mr. Politz to retain ownership of the policies.

Reimbursement Claims

A spouse may have a claim against the other spouse for reimbursement. LSA-C.C. art. 2358. The right of reimbursement is a claim by one spouse against the other which may be satisfied during the judicial partition from the obli-gor’s net share of the community property and, in certain instances, from his or her separate property. LSA-C.C. art. 2365; Dupree v. Dupree, 41,572 (La.App.2d Cir.12/20/06), 948 So.2d 254.
In the instant case, the court allowed certain reimbursement claims made by Mr. Politz and disallowed others. Among those allowed was a claim for payments he had made on one or more Discover Cards in the amount of $7,350. During the trial, Mr. Politz testified that the community had incurred a large amount of credit card debt at high interest rates. Therefore, he applied for, and received, .Discover Cards with zero-percent interest rates, and used those cards to eliminate the community credit card debt. Ms. Politz did not introduce any evidence to refute this testimony. Therefore, we find that the trial court was not clearly wrong in accepting Mr. Politz’s testimony regard *814 ing his reimbursement claim for the Discover | Klcredit cards.
Ms. Politz also argues that the trial court erred in allowing a reimbursement claim by Mr. Politz in the amount of $2,500. According to Ms. Politz, this amount is attributable to the liquidation of an insurance policy, of which Mr. Politz gave her $2,500, and kept the remaining $2,500.
We have reviewed the judgment with regard to Mr. Politz’s reimbursement claims. The judgment does not contain a $2,500 allocation denoting proceeds from any life insurance policy. Thus, this assignment lacks merit.
Ms. Politz further contends the trial court erred in denying her motion for a continuance after the trial court granted her former attorney’s motion to withdraw on February 25, 2010.[8] She argues that when the trial court allowed her attorney to withdraw, the trial had already been scheduled for April 16, 2010. According to Ms. Politz, the trial court’s denial of her motion to continue prevented her from obtaining new counsel. She alleges that all of the attorneys she approached declined to represent her in this matter because they did not have sufficient time to prepare for the trial.
A continuance may be granted in any case if there is good ground therefor. LSA-C.C.P. art. 1601. The trial court’s discretion in granting or denying a continuance under LSA-C.C.P. art. 1601 must be based upon consideration of the facts of each case and factors such as diligence, good faith, and reasonable grounds. English v. English, 47,331 (La.App.2d Cir.12/5/13),11 105 So.3d 994, writ denied, 2013-0326 (La.4/1/13), 110 So.3d 585; Connor v. Scroggs, 35,521 (La.App.2d Cir.6/12/02), 821 So.2d 542. Equally important is the exceptor’s corollary right to have his case heard as soon as practicable. English v. English, supra; Stett v. Greve, 35,140 (La.App.2d Cir.2/27/02), 810 So.2d 1203. The trial judge may also weigh the condition of the court docket, fairness to both parties and other litigants before the court, and the need for orderly and prompt administration of justice. English v. English, supra; Connor v. Scroggs, supra.
In the instant case, on April 13, 2010, Ms. Politz filed an ex parte motion to continue the trial which was scheduled to commence on April 16, 2010. On the morning of trial, Ms. Politz offered a number of reasons to support her contention that a continuance was needed. She argued that she had not yet obtained counsel and, although she is an attorney, she did not have any trial experience and was unprepared to proceed to trial.
After hearing arguments from both parties, the trial court found that “good ground” did not exist for a continuance under art. 1601. Rather, the court noted that Ms. Politz had several attorneys to represent her over the course of the proceedings. The court also noted that Ms. Politz had weeks to obtain counsel after her attorney withdrew; however, she had not done so.
We agree. Our review of the record reveals that Ms. Politz took every opportunity to remind the court of her inexperience and her need for a continuance. However, whenever she was advised to retain counsel, Ms. Politz failed to do so. Additionally, her prior counsel had provided Ms. Politz with the exhibits she needed for the trial; however, on the morning of *815 112the trial, she admitted that she had not downloaded any of them and did not have any of the documents with her in court. Accordingly, we find that the trial court did not err in finding that none of the grounds urged by Ms. Politz constituted “good grounds” for a continuance under LSA-C.C.P. art. 1601.
Furthermore, trial courts are vested with great discretion in determining the manner in which they handle their dockets. Appellate courts interfere in trial court matters such as control of a docket, case management, and determination of whether a continuance should be granted, only with reluctance and in extreme cases. Daigle v. City of Shreveport, 46,429 (La.App.2d Cir.10/5/11), 78 So.3d 758, writ denied, 2011-2472 (La.2/3/12), 79 So.3d 1027, citing Thinkstream, Inc. v. Rubin, 2006-1595 (La.App.lst Cir.9/26/07), 971 So.2d 1092, writ denied, 2007-2113 (La.1/7/08), 973 So.2d 730. After reviewing the transcript from the hearing and the supporting documents, we find that the trial court did not abuse its discretion in denying the motion for continuance. If granted, a continuance would have delayed a matter— that had been pending several years — indefinitely, while Ms. Politz sought counsel. Considering the facts of this case, we cannot conclude the trial court abused its discretion in moving forward with the trial. This assignment lacks merit.
Ms. Politz also contends the trial court erred in proceeding with the trial in her absence on June 23, 2010. She argues that she overslept and missed court that day because she was ill; she attempted to notify the court as soon as she could. When she returned to court for the next scheduled trial date, she objected to the court’s decision to proceed with the trial in her [ ^absence.
As stated above, LSA-C.C.P. art 1601 provides that a trial court may elect to grant a continuance “if there is good ground therefor.” LSA-C.C.P. art. 1602 mandates a continuance when “the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.”
In the instant case, it is undisputed that Ms. Politz was aware of the June 23, 2010 trial date. The transcript from that date provides, in pertinent part:
THE COURT: [I]t is now 9:30 and we have checked with the judge’s office and there has been no communication from Ms. Politz to the judge’s office that she has been delayed or unable to be here.
Mr. Bowers, I’m going to turn to you now and ask you, do you want to go ahead with the presentation of your evidence or if you have some reservation about that with going ahead knowing the nature [of] that case. It’s whatever your pleasure, sir.
MR. BOWERS: Well, what I’d like to do with the Court’s permission, if you’d like, I’d like to first call my office to see perhaps since she doesn’t know you don’t have a regular office here and just to avoid the possibility that perhaps she called the office, would you mind if I do that, sir?
THE COURT: No, sir. I would welcome that.
MR. POLITZ: Could I step out and call my office as |uwell, Judge, she may have called there?
THE COURT: Certainly, Mr. Politz.
THE SHERIFF: Would you like me to check the other courtrooms?
THE COURT: Yes, sir.
(Pause in Proceedings)
*816 MR. BOWERS: No call, no fax.
THE COURT: Have an entry made that Mr. Bowers contacted his office and spoke with his staff there, that there have been no voicemails or voice messages left, no fax messages, no emails, no communication at his office by Ms. Politz concerning her not being present at the designated time for ■ a hearing.
. MR. POLITZ: No contact with my office, Judge. Checking on Fairfield to see if she may have called there and my secretary was going to send me a text message if they got any message at all. So the answer to this point is no.
THE SHERIFF: I checked all the courtrooms, Your Honor, and the fourth floor and nobody is there.
[[Image here]]
MR. BOWERS: Now directly to the question that you posed about what my preference was as far as what to do, Your Honor, I understand the likelihood that if we proceed this morning that Ms. Politz in her absence, Ms. Politz may, you know, make an issue out of that from an appellate standpoint.
:|: * *
[I] would just as soon prefer to go ahead and move forward. If under 11Bother circumstances perhaps, you know, it may be different, and without belaboring the point, it’s been my sense that Ms. Politz has a history in this case obstructing the forward progress on the partition for years. And that’s my thoughts about it and my preference would be to proceed with all due respect.
THE COURT: Proceed.
The trial proceeded, during which Mr. Politz completed his testimony on direct examination and introduced multiple exhibits into the record.[9]
We first note that Ms. Politz did not object on the record when the trial reconvened on September 24, 2010. Rather, she re-urged her objection regarding the trial court’s denial of her motion to continue the trial which she had previously filed.' Additionally, our review of the record convinces us that the court made a diligent effort to ascertain the whereabouts of Ms. Politz. It is clear from the record that neither the court nor the other parties had any information concerning the reason Ms. Politz was absent. For these reasons, we find that the trial court did not err in proceeding with the trial on June 23, 2010. This assignment lacks merit.
Next, Ms. Politz contends the trial court erred in failing to designate her appeal as suspensive, rather than devolutive. She argues that she timely filed the appeal and paid “all court costs”; therefore, the appeal should have been designated as sus-pensive.
LSA-C.C.P. art. 2123 provides, in pertinent part:
|lfiA. Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of any of the following:
(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by *817 Article 1974 and Article 1811, if no application has been filed timely.
(2) The date of the mailing of notice of the court’s refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.
* * *
No security is required for de-volutive appeals; for a suspensive appeal of a judgment for the payment of a sum of money, with specified exceptions, security equal to the amount of the judgment plus interest is required. When the judgment distributes a fund in custodia legis, only security sufficient to secure the payment of costs is required. In all other cases, the security shall be fixed by the trial court at an amount sufficient to assure the satisfaction of the judgment, together with damages for the delay resulting from the suspension of the execution. LSA-C.C.P. art. 2124.
In a suspensive appeal, the appellant must both file a petition for appeal and furnish the security within the delay allowed in LSA-C.C.P. art. 2123. Wright v. Jefferson Roofing, Inc., 97-1217 (La.1/14/94), 630 So.2d 773. Where the appellant has failed to file the required bond, the suspensive appeal should be converted to a devolutive appeal, as long as the appellant has met those requirements. R.G. Claitor’s Realty v. Rigell, 2006-2336 (La.App.lst Cir.5/4/07), 961 So.2d 458, unit denied, 2007-1214 (La.9/21/07), 964 So.2d 340; Clement v. Graves, 2004-1831 (La.App.lst Cir.9/28/05),17 924 So.2d 196.
Herein, Ms. Politz filed a motion for an appeal and a notice of intent to file appeal within 30 days of the signing of the judgment. However, the record reveals that she did not pay the costs of the appeal, nor did she file the required bond within the delay set forth in LSA-C.C.P. art. 2123. Accordingly, we find that the trial court did not err in designating the appeal as a devolutive appeal, rather than a suspensive appeal. This assignment lacks merit.
Ms. Politz further contends the trial court erred in refusing to allow her to amend her detailed descriptive list during the trial. She argues that the court “disregarded” the language of LSA-R.S. 9:2801, which requires a trial court allow a party to amend his or her detailed descriptive list.
As stated above, LSA-R.S. 9:2801 sets forth the procedure for judicial partition of community property and settlement of claims after the dissolution of a marriage.[10] The statute provides for specific time periods for filing detailed descriptive lists and traversals. Although LSA-R.S. 9:2801 provides that the court “shall” allow amendments to the detailed descriptive list, a trial court, nonetheless, has discretion in setting and 11senforcing time limits. See, LSA-R.S. 9:2801(A)(2); Mathews v. Mathews, 457 So.2d 746 (La.App. 2d Cir. *818 1984). In Mathews, supra, the trial court refused to permit the husband to introduce into evidence his sworn list, which was filed six days prior to trial, but after the time limit for filing.
In the instant case, Ms. Politz filed her original detailed descriptive list on July 19, 2004; the trial commenced April 16, 2010; the motion to amend the detailed descriptive list was not filed until November 10, 2010. By this time, Mr. Politz had concluded his testimony on direct examination.
In her argument to the trial court, Ms. Politz offered a myriad of reasons for her delay in filing the motion to amend her detailed descriptive list.[11] After hearing arguments with regard to the motion, the trial court “disallow[ed] the amendment of the detailed descriptive list” stating that they were “well into the trial of this matter.” Nevertheless, the court allowed Ms. Politz to introduce the document into the record as an offer of proof.
After reviewing the record, we find that the trial court did not abuse its discretion in denying Ms. Politz’s motion to amend her detailed descriptive list. Contrary to Ms. Politz’s assertion, LSA-R.S. 9:2801 does not require courts to allow litigants to amend detailed descriptive lists at any time. As stated above, this matter has been pending since 2002, and has been subjected to numerous delays. The trial finally commenced on April 16, 2010, several months before Ms. Politz sought to amend her detailed 119descriptive list. The trial court has great interest in controlling all aspects of a trial and has discretionary authority with regard to evidentiary matters (the trial court has great discretion in controlling the conduct of the trial and the presentation of evidence). Bickham v. Riverwood Int’l. Corp., 42,122 (La.App.2d Cir.10/8/07), 966 So.2d 820. Therefore, under the facts of this ease, we find no error in the trial court’s ruling disallowing Ms. Politz’s motion to amend her detailed descriptive list after the trial commenced. This assignment lacks merit.
Additionally, Ms. Politz argues that the trial court erred in denying her request to introduce into evidence correspondence and a copy of a cancelled check from New York Life Insurance Company. She argues that the documents would have proven that Mr. Politz forged her name on a check from New York life insurance company in 2001. Mr. Politz objected, arguing that the documents were irrelevant. The court allowed Ms. Politz to proffer the documents into the record.
LSA-C.E. art. 103(A) provides, “Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.” The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed absent a clear abuse of that discretion. Simmons v. Christus Schumpert Medical Ctr., 45,908 (La.App.2d Cir.6/15/11), 71 So.3d 407, writs denied, 2011-1592 (La.10/7/11), 71 So.2d 317, and 2011-1591 (La.10/7/11), 71 So.2d 318; Graves v. Riverwood Int’l. Corp., 41,-810 (La.App.2d Cir.1/31/07), 949 So.2d 576, writ denied, 2007-0630 (La.5/4/07), 956 So.2d 621.
LpOn appeal, this Court is required to consider whether the complained-of ruling was erroneous and whether the error affected a substantial right of the complaining party. If a party’s substantial right was not affected by *819 an evidentiary ruling, a reversal is not warranted. Simmons, supra, citing LSA-C.E. art. 103(A). The determination is whether the error, when compared to the record in its totality, had a substantial effect on the outcome of the case, and it is the complainant’s burden to so prove. Id.
We find no error in the trial court’s denial of Ms. Politz’s request to introduce the correspondence and cancelled check into evidence. The check from the insurance company was dated April 12, 2001, prior to the dissolution of the marriage. Additionally, the check was not listed on any of the detailed descriptive lists as an asset or liability of the community. Thus, the trial court did not err in concluding that it was irrelevant evidence with regard to the partition proceeding. This assignment lacks merit.
Next, Ms. Politz contends the trial court erred in accepting Mr. Politz’s testimony regarding the amount of funds that remained in the community property bank accounts. She argues that although Mr. Politz testified at the trial that $1,421 remained in the accounts, he had testified that the accounts contained a significantly higher amount in an earlier proceeding.
It is the duty of the trier of fact to weigh credibility and to accept or reject all or part of a witness’s testimony. Badke v. USA Speedway, LLC, 49,060 (La.App.2d Cir.5/14/14), 139 So.3d 1117; Corder v. Lively, 39,780 (La.App.2d Cir.6/29/05), 907 So.2d 824. Reasonable evaluations of |⅞1 credibility should not be disturbed on appeal. See, Rosell v. ESCO, 549 So.2d 840 (La.1989).
Ms. Politz failed to offer any evidence to refute Mr. Politz’s testimony regarding the amount of funds in the community property bank accounts. The trial court had the discretion to accept or reject any part of Mr. Politz’s testimony. The court elected to accept the testimony; we find no manifest error.
Further, Ms. Politz contends the trial court erred in accepting the judgment prepared by Mr. Politz. She argues that the proposed judgment “circumvented” the partition judgment regarding the allocation of and reimbursement for the oil royalty interests.
We first note that Mr. Politz filed a “Motion to Address Form and Content of Judgment,” alleging that he had mailed the proposed judgment to Ms. Politz, and she had failed to return it to him with her signature affixed. Thereafter, on April 5, 2013, the trial court conducted a hearing to address any objections Ms. Politz may have had to the form of the proposed judgment. During the hearing, Ms. Politz attempted to raise multiple objections as to the content of the judgment. With regard to the form of the judgment, Ms. Politz objected to the fact that the judgment failed to state that the “oil and gas royalties should revert back to the date the community regime ended[.]” After hearing arguments from both parties, the trial judge signed the judgment, stating, “[I]t is my finding that the judgment accurately tracks the language that I used in my ruling on the partition suit[.]”
We agree. This Court has reviewed the judgment and compared it to 12athe transcript of the trial court’s ruling. We do not find anything in either document to support Ms. Politz’s contention that the judgment “circumvented” the court’s ruling. This assignment lacks merit.
Ms. Politz also contends the trial court erred in “refusing to hear” her rule for permanent spousal support. She argues that the court has denied all of her requests for a hearing on her rule for spousal support.
*820 We have not found anything in the record to support Ms. Politz’s contention that the trial court “denied” her requests for spousal support. In fact, on several occasions during the trial, Ms. Politz attempted to assert her claim for spousal support. On September 24, 2010, the court stated, “I cannot determine whether you’re entitled to alimony until I am able to decide if, to determine if you are entitled to any funds out of this, because if you have funds out of this, you’re not entitled to alimony.” Based on the trial court’s ruling with regard to the partition of the community, Ms. Politz’s rule for spousal support remains viable. Accordingly, we shall remand this matter to the trial court to determine whether Ms. Politz is entitled to permanent spousal support and the amount to which she is entitled.
Finally, Ms. Politz contends the trial court erred in “ignoring” a rule nisi that Mr. Politz filed on January 16, 2013. According to her, the rule was in reference to matters which would have benefited both her and Mr. Politz with regard to the partition proceeding.
The rule in question was filed well after the conclusion of the trial, but prior to the date of the trial court’s judgment. However, Ms. Politz did l^not file any response to the Rule Nisi, nor did she object to the trial court’s failure to set the rule for hearing. Thus, Ms. Politz did not properly raise the issue in the lower court. This Court will not consider an issue raised for the first time on appeal. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714; Cooper v. Southern Hunting Products, Ltd., 39,166 (La.App.2d Cir.12/22/04), 891 So.2d 91.
CONCLUSION
For the reasons set forth herein, the judgment of partition rendered by the trial court is hereby affirmed. We remand this matter to the trial court for a hearing to determine whether Ms. Politz is entitled to permanent spousal support and the amount to which she is entitled. Costs of this appeal are assessed one-half to defendant, Alice Catherine Bordelon Politz, and one-half to plaintiff, Nyle Anthony Politz.
AFFIRMED; REMANDED.

. Three children were bom of the marriage. The children had reached the age of majority when the petition for divorce was filed.

. See, Politz v. Politz, 2005-2568 (La.App. 1st Cir.8/1/07), 2007 WL 2193547 (not reported), writ denied, 2007-2137 (La. 1/7/08), 973 So.2d 728 and Politz v. Politz, 44,885 (La.App.2d Cir.1/27/10), 31 So.3d 552.

. On December 21, 2004, the parties entered into a consent judgment whereby Ms. Politz agreed that Mr. Politz’s interim spousal support obligation was satisfied by virtue of the expenses he had paid on her behalf. In the same document, Mr. Politz agreed to (1) waive certain claims for reimbursement, including payment of the mortgage homeowner's insurance and property taxes on the family home; (2) waive his rental claim for Ms. Politz's use of the family home from the time the community was terminated until November 30, 2003; and (3) continue to pay, until exhausted, the debt Ms. Politz incurred for the purchase of a vehicle post-termination of the community.

. The court also ordered Mr. Politz to pay Ms. Politz final periodic spousal support in the amount of $658 per month "until the mortgage debt on the house and lot previously owned by the community in which Alice Catherine Politz resides in is paid in full." However, in Politz v. Politz, 2005-2568 (La.App.lst Cir.8/1/07), 2007 WL 2193547 (not reported), writ denied, 2007-2137 (La.1/7/08), 973 So.2d 728, the court of appeal amended the award, increasing the periodic spousal support to $1,300 per month.

. Due to scheduling difficulties, several court hearings were held on April 16, 2010, June 23, 2010, September 24, 2010, November 12, 2010, January 14, 2011, April 29, 2011, and October 14, 2011.

. Additionally, the court ordered Ms. Politz to return to Mr. Politz the following items: (1) Mr. Politz’s birth certificate; (2) Mr. Politz's baptismal certificate; and (3) the silver certificate ($1.00) given to Mr. Politz by his godfather.

.Rule 2-12.4 of the Louisiana Uniform Rules-Court of Appeal requires an appellant’s brief to comply with certain requirements. The brief must include, among other things, "a concise statement of the case, the action of the trial court thereon, a specification or assignment of the alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought.” Rule 2-12.4 further provides that "[a]U specifications or assignments of error must be briefed.” If *811 they are not briefed, "[t]he court may consider as abandoned any specification or assignment of error which has not been briefed.” Additionally, rule 2-12.4 provides that the appellant's argument "shall contain: (a) appellant’s contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies, (b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion, and (c) for each assignment of error and issue for review which required an objection or proffer to preserve, a statement that the objection or proffer was made, with reference to the specific page numbers of the recordf.]”
Ms. Politz appears in this appeal pro se and she has filed a brief which does not fully comply with the requirements of Rule 2-12.4. Recognizing Ms. Politz’s pro se status, as well as her limited experience in practicing law, this Court has attempted to ascertain the substance of her arguments and treat them as properly raised.

. David C. Hesser, Ms. Politz's former counsel, filed the motion to withdraw, alleging that Ms. Politz "does not wish to sign a fee agreement in order to continue counsel representing her in this matter. ”

. On the next day of trial, September 24, 2010, the trial court stated on the record that Ms. Politz had called his office on June 23, 2010, at 10:30 a.m. (court was scheduled to begin at 9:00 a.m.). She had advised the trial court’s office that she had "overslept because of some medication that [she] had taken the night before.”

. LSA-R.S. 9:2801(A) provides, in pertinent part:
(l)(a) Within forty-five days of service of a motion by either party, each party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities^]
[[Image here]]
(b) Each party shall affirm under oath that the detailed descriptive list filed by that party contains all of the community assets and liabilities then known to that party. Amendments to the descriptive lists shall be permitted. No inventory shall be required.
[[Image here]]

. Ms. Politz argued that she "was under the impression from [her] former attorney that he had already submitted [the amended detailed descriptive list] before [they] began the community partition back in December 2009."