STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0694

IOANA BALTAG COSMAN

VERSUS

RADU COSMAN

Judgment Rendered: __JAN 1 0 2023

* * * * * * * *

Appealed from
The Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. F216757

The Honorable Charlene Charlet Day, Judge Presiding

* * * * * * * *

Vincent A. Saffiotti                    Counsel for Plaintiff/Appellee
Natalie C. Neale                        Ioana Baltag Cosman
Baton Rouge, Louisiana


Mary Katherine "Katie" Shoenfelt        Counsel for Defendant/Appellant
Baton Rouge, Louisiana                  Radu Cosman


Carmen T. Hebert
Gonzales, Louisiana



* * * * * * * *


BEFORE: WELCH, PENZATO, AND LANIER, JJ.

Welch J. concurs without reasons

Penzato, J., concurs

**LANIER, J.**

This appeal concerns the trial court's judgment in a community property partition. For the reasons that follow, we affirm.

## PERTINENT FACTS AND RULING OF THE LOWER COURT

Ioana and Radu Cosman met in Romania in 1998 and began a romantic relationship. Mr. Cosman moved to the United States in 1999, leaving Ms. Cosman behind in Romania. However, the parties maintained contact, with Mr. Cosman visiting Ms. Cosman twice a year in Romania. When Mr. Cosman arrived in Louisiana in 1999, he started doing stucco work under the tradename Stucco Design. Ms. Cosman moved to the United States in 2001 and began living with Mr. Cosman. They were married on November 26, 2005. Just four days prior to their marriage, at the request of Mr. Cosman, the parties entered into a "Marriage Contract" that stated, in pertinent part, as follows:

I.
All property and effects of the said appearers, owned by him or her at the time of the celebration of said intended marriage, are hereby declared to be separate property, and that of the wife, separate and paraphernal property, and they and each of them do hereby expressly reserve to themselves individually the entire administration of their respective particular movable or immovable property owned by them at the time of the marriage and the respective free enjoyment of each of their revenues.

II.
All of the earnings, interest, fruits, revenues and products of the separate property of each spouse, whether such property is now owned or is hereafter acquired, shall belong to the separate estate of the spouse from which same was derived and shall not form a part of the community of acquets and gains which will otherwise exist between the parties.

According to the record, Mr. Cosman continued to do stucco work as a self-employed, sole proprietor doing business as Stucco Design. Mr. Cosman formed Stucco Design, LLC with the Secretary of State on February 22, 2009, four years after the parties' marriage.

2

Ms. Cosman filed for divorce in March 2019, requesting a divorce pursuant to La. Civ. Code article 102 as well as a determination of other incidental matters. Subsequently, in May 2019, Ms. Cosman filed a petition for partition of community assets. The parties filed several preliminary detailed descriptive lists. Mr. Cosman listed Stucco Design, LLC as his separate asset "existing prior to date of the marriage." Ms. Cosman listed the business as "presumed community" and "established during the marriage."

The trial on the traversal of the classification of Stucco Design, LLC and eight immovable properties purchased during the marriage took place over a span of six days. After hearing testimony and considering the documentary evidence introduced by the parties, the trial court took the matter under advisement. Thereafter, on January 26, 2021, the trial court issued written reasons for judgment, finding that Stucco Design, LLC and the eight pieces of immovable property at issue were all community property. A judgment in accordance with these findings was signed on March 2, 2021.

Thereafter, on June 14, 2021, the parties filed a joint detailed descriptive list. The community property partition trial was held over a period of five days, before which the parties entered into numerous stipulations as to the classification and valuation regarding many of the parties' assets. The primary issue remaining for the trial court to decide was the valuation of Stucco Design, LLC.

After hearing from the parties' respective experts regarding the valuation of the company, and considering all of the documentary evidence that was introduced, the trial court adopted the calculations made by Ms. Cosman's expert, Jason MacMorran, including the allocation for Mr. Cosman's personal goodwill, and set the value for Stucco Design, LLC at $3,875,000.00. The trial court issued extensive reasons for judgment on December 1, 2021, and a judgment in

3

accordance with those findings was signed on February 14, 2022.[1] This appeal by Mr. Cosman followed.

## ASSIGNMENTS OF ERROR

1. The trial court erred when it interpreted a marriage contract to only reserve the "fruits" of the parties' separate property, when the contract reserved "the free enjoyment of each of their revenues,["] and "all earnings, interest, fruits, revenues and products of the separate property of each spouse, whether such separate property is now owned or hereafter acquired."

2. The trial court erred in ruling that Radu Cosman did not acquire the membership interest of the LLC through real subrogation of his separate tangible and intangible assets that he had reserved under the marriage contract.

3. The trial court erred in classifying the membership interest [in] the LLC as a community asset acquired through contribution of community assets when 1) no community assets were contributed to the LLC, and 2) the court disregarded the contribution of intangible assets used by the LLC on its formation.

4. The trial court erred in refusing to admit evidence of the value of Radu's separate assets contributed in exchange for the membership interest in the LLC.

5. The trial court erred in classifying eight immovable properties as community assets when those assets were purchased by Radu Cosman as his separate property and paid for with civil fruits of his separate assets, which had been reserved under the marriage contract.

6. The trial court erred in awarding the funds in LLC-owned bank accounts to the parties individually.

7. The trial court erred in refusing to admit the 2011-2014 federal tax returns for the LLC when the tax returns showed that all money in the LLC bank accounts were revenues and earnings of the company.

8. The trial court erred in refusing to admit evidence establishing community tax liabilities for tax years 2018, 2019, and 2020, and refusing to allocate the liabilities, when the issue was raised multiple times before and during trial, and the evidence was presented before all parties rested.

9. The trial court erred in accepting [Mr.] MacMorran's valuation of the membership interest of the LLC, which was not based on reliable data, including in its value immovable properties and vehicles not

---

[1] Pursuant to an interim order of this court, the matter was previously remanded to the trial court for the signing of an amended judgment to correct deficiencies in the judgment's decretal language. The trial court signed an amended judgment on October 31, 2022, and the record has been supplemented with same.

4

titled to the LLC, excluding bank accounts owned by the LLC, excluding tax liabilities, and not correctly calculating the value of Radu's goodwill.

## STANDARD OF REVIEW

The trial court's allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. **Berthelot v. Berthelot**, 2017-1055 (La. App. 1 Cir. 7/18/18), 254 So.3d 800, 808. In community property partitions, the trial court is granted much discretion in valuing and allocating assets and liabilities and is required to consider the source and nature of each asset or liability, the financial situation of the other spouse, and any other relevant circumstances. See La. R.S. 9:2801(A)(4)(c); **Berthelot**, 254 So.3d at 808. Given this great discretion, the trial court is not required to accept at face value a spouse's valuation of assets or debts, or claims against the community. **Berthelot**, 254 So.3d at 816.

A trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. **Berthelot**, 254 So.3d at 806. A trial court's finding regarding the nature of property as being either community or separate is a factual determination subject to the manifest error/clearly wrong standard of review. **Benoit v. Benoit**, 2011-0376 (La. App. 1 Cir. 3/8/12), 91 So.3d 1015, 1021, writ denied, 2012-1265 (La. 9/28/12), 98 So.3d 838.

Concerning interpretation of a marriage contract, whether a contract is ambiguous or not is a question of law and subject to the *de novo* standard of review on appeal. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed absent manifest error. **Guest House of Slidell v. Hills**, 2010-1949 (La. App. 1 Cir. 8/17/11) 76 So.3d 497, 499; see also **Strachan v. Eichin**, 2015-1431 (La. App. 1 Cir. 4/15/16), 195 So.3d 61, 64.

5

Where one or more legal errors by the trial court interdict the fact-finding process, the manifest error standard is no longer applicable. The standard of review for mistakes of law by the trial court requires the appellate court to engage in a *de novo* review of the entire record and render a judgment on the merits. See **Rosell v. ESCO**, 549 So.2d 840, 844 n.2 (La. 1989); **Berthelot**, 254 So.3d at 807. The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed absent a clear abuse of that discretion. **Politz v. Politz**, 49,242 (La. App. 2 Cir. 9/10/14), 149 So.3d 805, 818.

## DISCUSSION

As previously noted, there were two trials in this matter (the traversal trial and the community partition trial) that spanned almost two weeks in length, during which the trial court heard from numerous witnesses and considered an extensive amount of documentary evidence regarding the parties' assets. After considering all of the evidence before it at the traversal trial, the trial court issued very thorough reasons for judgment, noting in part:

### The Marital Contract

The legal regime is the community of acquets and gains...La. C.C. art. 2327. Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited under public policy. La. C.C. art. 2329. A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. La. C.C. art. 2328.

Mr. Cosman's foremost position on the matrimonial agreement is that his intangible assets, such as his goodwill, are his separate property because he "acquired" those intangible assets prior to the marriage. Regardless of any marital contract, any property acquired by the spouse prior to the establishment of the community regime is the separate property of that spouse by law, and Mr. Cosman's argument regarding any intangible assets owned prior to the marriage is addressed directly, *infra*. However, Mr. Cosman seemingly also argues, in his post-trial brief, that his "earnings generated from stucco work" were "reserved to Mr. Cosman as his separate property." The Court rejects this position. As a whole, the "Matrimonial Agreement" makes little sense. The only part of the agreement that's entirely clear is that the parties clearly intended to enter into a community of acquets and gains, per the last line of section II of the "matrimonial

agreement," where it explicitly states, "...the community of acquets and gains which will **otherwise exist between the parties.**" [Emphasis added]. However, the first paragraph of the "matrimonial agreement" makes little sense as written. The beginning of the paragraph states,

> "All property and effects of said appearers owned by him or her at the time of the celebration of said intended marriage, are hereby declared to be separate property, and that of the wife, separate and paraphernal property, and they and each of them hereby expressly reserve to themselves individually the entire administration of their respective particular movable or immovable property owned by them at the time of the marriage..."

This phrase in paragraph I unnecessarily addresses property owned at the time of marriage. Any property owned prior to marriage is already separate property of the spouses by law. The remainder of the phrase in paragraph I reads as follows: "and the respective free enjoyment of each of their own revenues." Mr. Cosman argues in his post-trial brief that this phrase entitles Mr. Cosman to retain all of his earnings from his stucco work as his separate property. The Court rejects this argument for several reasons. First, this paragraph does not "reflect a clear intent of the parties to modify their matrimonial regime." *See Robert v. Robert*, [2015-0313 (La. App. 1 Cir. 2/25/16), 2016 WL 763881]. On the contrary, the Cosmans clearly had the intent to have a community of acquets and gains "otherwise exist between the parties." The only clear intent of the parties per this matrimonial agreement was to reserve fruits of their separate property, retain any property as separate that was acquired prior to the marriage, and otherwise enter into a community property regime.

Further, it makes no sense, and would be entirely inequitable, for Mr. Cosman to retain all his [S]tucco [D]esign revenue as his separate property but also have a community of acquets and gains "otherwise exist between the parties," when the only monies brought into the marriage, by his own admission, were Mr. Cosman's earnings. Therefore, the Court rejects the argument that Mr. Cosman's earnings were entirely his separate property, as that was not clearly the intent of the parties in their matrimonial agreement, and this argument was not even sufficiently argued before the [C]ourt, nor addressed nearly enough in depth, at the time of trial. Further, if it was truly the parties' intent to be separate in property, not only should it have been made abundantly clear upon the execution of the matrimonial agreement, but also, the Court would not have spent unnecessary time over four days of trial addressing the "intangible assets" acquired before the marriage and allegedly used to capitalize Stucco Design, LLC.

## The Alleged Intangible Assets, Including "Goodwill"

. . . .

The Court vehemently rejects the argument that Mr. Cosman, in his capacity as a natural person, could be viewed as "property" for the purposes of community property classification. The Court has no doubt that Mr. Cosman is a successful stucco contractor. However, the *Robinson* [*v. Heard*, 2001-1697 (La. 2/26/02), 809 So.2d 943] court makes it clear that, under Louisiana law, a sole proprietorship has no separate legal identity apart from the individual. Therefore, Radu Cosman d/b/a Stucco Design has no legal distinction from Mr. Cosman himself. Allowing a party to claim himself as an asset for community property partition purposes could set a dangerous precedent, and the Court rejects this theory.

At trial, Mr. Cosman pivoted his argument to focus primarily on his allegation that Stucco Design, LLC was capitalized with separate property "intangible assets," including Mr. Cosman's personal and professional goodwill, contractor's license, business relationships, workforce in place etc. However, Ms. Cosman's expert, Jason MacMorran, could only affirmatively conclude that there were seven fixed assets used to capitalize Stucco Design, LLC. He also testified that even if intangible assets did exist, no such asset was ever valued. On the other hand, Mr. Cosman's expert, Mark Shirley, placed great weight on Mr. Cosman's alleged "goodwill," despite [the] fact that he did not and seemingly could not place a value on same. In fact, the Court found Mr. Shirley's testimony largely speculative in nature and less credible than Mr. MacMorran's.

. . . .

The tangible assets used to capitalize Stucco Design, LLC were, as follows:

(1) $1,000 in capital stock;
(2) Loan from shareholders in the amount of $41,754.00;
(3) Fixed assets, as follows:
　　1. 2003 Chevrolet Truck
　　2. Scaffold
　　3. Compressor
　　4. 2001 Chevrolet Truck
　　5. 2007 Chevrolet Truck
　　6. 2001 Chevrolet Truck
　　7. Generator

First, the capital stock initiated as a debt funded by a promissory note. Mr. MacMorran noted that the $1,000 "comes off the books in 2010," suggesting that the promissory note was paid the year after incorporation. This $1,000 promissory note was executed during the marriage and paid back during the marriage. Therefore, absent evidence to the contrary, which there was none, the $1,000

8

capital stock is presumed to have originated as a community debt and paid out a year later with community funds. Thus, the $1,000 in capital stock is presumed to be community. As for the loan from shareholders, the experts had little information from which to glean information about this loan, but Mr. MacMorran's report states that it appears, from the 2009 balance sheet, that this loan appears to be a balance adjustment. Nevertheless, no evidence was presented to show the separate nature of this loan, so the Court presumes it to be community.

Second, three of the seven fixed assets were acquired prior to the marriage. Those three assets are: the 2003 Chevrolet Truck, the scaffold, and the compressor. All three of these items were fully depreciated at the time of incorporation and had no value. The remaining four fixed assets (the 2001 Chevrolet truck, the 2007 Chevrolet truck, the 2001 Chevrolet truck, and the generator) were acquired after the date of marriage. Again, because these items were acquired after the date of marriage, they are presumed to be community. Mr. Cosman could not show that these assets were acquired with separate funds, absent a finding that his sole proprietorship is the separate property that acquired them or absent a finding that they were purchased with separate funds, both of which the Court has already rejected *supra*. Therefore, the Court presumes these assets to be community. The value of these fixed assets used in the incorporation amounted to $76,667.00. Of the assets used to capitalize Stucco Design, LLC, which can be valued, the Court finds that the separate tangible assets used are clearly inconsequential to the community assets used. Therefore, the Court finds that Stucco Design, LLC is a community asset of the parties.

## The Immovable Properties

Mr. Cosman purchased eight pieces of immovable property during the marriage.

. . . .

All of the ... properties were purchased after the parties' marriage on November 26, 2005. All of the ... acts of sale were introduced into evidence during the trial. Ioana Cosman did not concur or appear in any of the acts of sale introduced into evidence. A declaration in an act of acquisition that things are acquired with separate funds as the separate property of a spouse may be controverted by the other spouse unless he concurred in the act. La. C.C. art. 2342. Absent this declaration, the Court presumes these properties are community, as they were purchased during the marriage of the parties. Mr. Cosman did not introduce any sufficient evidence to show the source of the funds used to purchase the properties. Therefore, the Court finds that Mr. Cosman did not meet his burden of proof in proving, by a preponderance of the evidence, that the above properties are his separate property (see Talbot, [v. Talbot, 2003-0814 (La. 12/12/03), 864 So.2d 590]). The Court finds that all eight of the

9

above properties are community property of the parties. (Footnotes omitted.)

After hearing from the parties and their experts at the partition trial with regard to the valuation of Stucco Design, LLC, and considering an allocation for Mr. Cosman's personal goodwill, the trial court adopted the value of Stucco Design, LLC proposed by Mr. MacMorran, $3,875,000.00. Moreover, the trial court divided the assets between the parties such that, after an equalizing payment paid by Mr. Cosman to Ms. Cosman, they would each receive property of equal net value. Included in the division of assets was Stucco Design, LLC, which was allocated to Mr. Cosman, and the funds from four separate bank accounts in the name of Stucco Design, LLC. Mr. Cosman was allocated funds from two of the accounts, and Ms. Cosman the other two.

Following our thorough review of the evidence in this case and the very insightful and thorough reasons for judgment offered by the trial court, we find no abuse of discretion or reversible error in the trial court's findings below. We agree with the essential factual findings provided in the trial court's reasons for judgment. With regard to Mr. Cosman's argument that the trial court erred in its interpretation of the marriage contract, we have reviewed the language of the contract and agree with the trial court that the "only clear intent" of the agreement was to "reserve fruit of their separate property, retain any property as separate that was acquired prior to the marriage, and otherwise enter into a community property regime." Concerning Mr. Cosman's allegation that he acquired the membership interest in Stucco Design, LLC through real subrogation, we have considered the record evidence and find nothing to support Mr. Cosman's argument. Rather, the record reasonably supports the trial court's finding that based on the assets used to capitalize Stucco Design, LLC that could be valued, any separate tangible assets

used were clearly inconsequential to the community assets used, thus resulting in the classification of Stucco Design, LLC as a community asset.

Moreover, concerning the funds in the four bank accounts owned by Stucco Design, LLC, the trial court determined that the funds constituted community property and allocated the funds in these accounts such that "each spouse [would receive] property of an equal net value."[2] See La. R.S. 9:2801(A)(4)(b). As noted by Ms. Cosman in her brief to this court, the evidence supports a finding that these accounts, although in the name of Stucco Design, LLC, did not appear on the company's books or appear to be utilized by the company. Furthermore, neither party was paid wages for the community labor they contributed to Stucco Design, LLC. Thus, we find no abuse of discretion by the trial court in allocating the funds from these bank accounts to the parties.

Mr. Cosman also alleges the trial court erred in accepting Mr. MacMorran's valuation of the membership interest of Stucco Design, LLC, because his calculations were not based on reliable data. Where expert testimony differs, it is the trier of fact who must determine the more credible evidence, and factual findings based upon that determination may not be overturned unless manifest error appears in the record. The trier of fact is entitled to assess the credibility and accept the opinion of an expert just as with other witnesses, unless the stated reasons of the expert are patently unsound. Of course, the effect and weight to be given such expert testimony depends upon the underlying facts and rests within the broad discretion of the trial court. Moreover, in deciding to accept the opinion of one expert and reject the opinion of another, a trial court can virtually never be manifestly erroneous. **Fox v. Fox**, 97-1914 (La. App. 1 Cir. 11/6/98), 727 So.2d 514, 516, writ denied, 99-0265 (La. 3/19/99), 740 So.2d 119. Based upon our

---

[2] In subsequently rendered amended reasons for judgment, the trial court clarified that it was only the funds in these accounts that were being allocated to the parties. Ownership of the accounts was never transferred from Stucco Design, LLC.

11

review of the record, we are unable to say that the trial court was manifestly erroneous in its decision to accept the testimony of Mr. MacMorran, Ms. Cosman's expert, and the value he placed on Stucco Design, LLC, $3,875,000.00.

Regarding the classification of the eight immovable properties as community, the properties were all purchased during the community. There was no declaration by Mr. Cosman that any of the properties were acquired with separate funds. Thus, the properties are presumed to be community, and it was Mr. Cosman's burden to prove otherwise. We agree with the trial court that Mr. Cosman failed to meet this burden as there is no evidence in the record to support his argument that he used separate funds to purchase these eight immovables. Accordingly, we find no error in the trial court's classification of these eight immovables as community.

Finally, we find no merit to Mr. Cosman's claim that the trial court's evidentiary rulings concerning the alleged tax liability were in error. As noted, the trial court is granted broad discretion in evidentiary rulings. **Politz**, 149 So.3d at 818. The trial court denied the tax liability as a community liability, noting it "was not presented enough evidence to establish the existence of, or an amount to attribute thereto." We have thoroughly reviewed the evidence before us, including the evidence proffered by Mr. Cosman, and find no abuse of discretion in this ruling.

## DECREE

For the above and foregoing reasons, we affirm the judgment of the trial court and assess all costs associated with this appeal against defendant/appellant, Radu Cosman. We issue this memorandum opinion in accordance with Uniform Rules—Courts of Appeal, Rule 2–16.1 B.

**AFFIRMED.**